## PERLEY PARKER *vs.* ALBRO O. OSGOOD.

A levy of an execution upon land for a sum not greater than the amount of the debt and costs recovered, with interest thereon to the time when the levy was completed, and the costs of levy, is valid, although the officer's return does not show in express terms what sum was added for interest.

Proof of facts sufficient to put a party on inquiry, or to amount to an implied or constructive notice, is not sufficient to show that an attaching creditor had actual notice of an unrecorded deed, under Rev. Sts. *c.* 59, § 28.

It is not sufficient proof that an attaching creditor had actual notice, under Rev. Sts. *c.* 59, § 28, of an unrecorded deed by his debtor to a co-tenant, of a portion of land held by them in common, to show that the two tenants in common divided the land between themselves by deeds to each other for the nominal consideration of one dollar; that afterwards the taxes, which until then had been assessed upon them jointly, were assessed upon them severally; that for several years afterwards they occupied their respective lands in severalty; that the debtor conveyed portions of his land by deeds of warranty, which were recorded; that the other tenant executed a lease for years of a portion of his land; that upon the death of the latter his real estate was inventoried and appraised as "building and land," and the inventory and appraisal were returned into the probate court; that a short time before the attachment the deed to the debtor was recorded; and that a few months after the attachment the attaching creditor used to a third person expressions tending to show that he then knew that the land had been divided.

PETITION FOR PARTITION of land in Dracut, which the respondent claimed to be entitled to hold to his sole use.

At the trial in the superior court, before *Rockwell,* J., it appeared that in December 1844, Albigence W. Fisher, who was then the owner of the premises, conveyed them to William F. Osgood and Aaron C. Osgood, to be held in common. The said William and Aaron held other adjoining lots in common the most of which they inherited from their father.

The petitioner claimed title under the levies of two executions issued upon judgments recovered by him against William F. Osgood, on the 16th of January 1854, in which attachments of the real estate were made on the 21st of October 1853 The second judgment was for $521 damages, and $12.73 costs and an execution issued on the 17th of January, for these amounts, and twenty-five cents more for the execution. The return of the officer showed that upon this execution he completed a levy on a certain undivided portion of the premises in controversy on the 18th of the following November, and that

the same was appraised at the sum of $583, which was stated to be "the amount of this execution and all fees and charges;" and the items of the fees and charges were given, amounting in all to $22.32. The respondent objected to the admission in evidence of this levy, on the ground that more property had been taken by the officer than he was authorized to take, but the judge overruled the objection.

The respondent is the only child and heir of Aaron C. Osgood, who died intestate in September 1852; and, to prove his sole title to the premises, offered to show that on the 2d of March 1846 William F. Osgood and Aaron C. Osgood, by mutual deeds of quitclaim, for the nominal consideration of one dollar, divided the lands held by them in common; that Aaron received as a portion of his share all of the premises now in dispute; that from the time of this division the taxes, which until then had been assessed upon them jointly, were assessed upon them severally, in accordance with the division; that Aaron thereafter lived upon the land so conveyed to him, cultivating and using the same and making improvements thereon until his death, and leased a portion thereof for five years to a person who occupied the same under the lease; that William thereafter occupied, used and improved the land so conveyed to him, and conveyed portions thereof by deeds of warranty which were recorded before the attachment of the petitioner; that upon Aaron's death his property was duly inventoried and appraised, and the inventory and appraisal were returned into the probate court, and put upon record, on the 1st of March 1852, in which the real estate was described as "Building and land, $4000;" that the deed from Aaron to William was recorded on the 20th of September 1853, and the deed from William to Aaron was never recorded; and that in the winter of 1853–54 the petitioner said to another attaching creditor of William F. Osgood, "that he hoped they would not go to putting on to Aaron's property, so as to hurt the boy."

The judge ruled that this evidence was inadmissible, and directed a verdict for the petitioner, which was accordingly returned, and the respondent alleged exceptions.

*T. Wentworth*, for the respondent.

*W. P. Webster*, for the petitioner.

DEWEY, J.   The objection to the validity of the levy of the second execution, under which the petitioner claims title, upon the ground that the levy was for a larger sum than the officer was authorized to collect thereon, is not tenable.   The whole amount set off to the creditor was appraised at $583.   Taking the sum for which judgment was rendered for debt and costs, and adding thereto the accruing interest from the date of the judgment to the date of the completion of the setting off of the land, and the officer's fees and charges, and it will be found to amount to the full sum for which the property was taken.   The addition of such interest was authorized by statute.   *Taylor* v. *Robinson*, 2 Allen, 562.

It was not necessary that the return should specify the precise sum thus taken for interest.   The officer having certified that the sum of $583 was the amount of the execution and all fees and charges, the execution would readily furnish the means of ascertaining the amount taken for interest.   The officer having correctly stated the amount which was to be satisfied by the levy, and property not having been set off to the creditor beyond that amount, no ground exists for avoiding the levy on that account.

The further inquiry is as to the correctness of the ruling of the court as to the deed from William F. Osgood to Aaron C Osgood.   This deed being of an earlier date than the attachment, must, if operative as against the petitioner, defeat his attachment of the land as the property of William F. Osgood. But this deed was not recorded, and of course could have no effect as against an attaching creditor, unless he had actual notice thereof.   Rev. Sts. *c.* 59, § 28.   What is to be understood as required by this statute provision ?   In the case of *Curtis* v. *Mundy*, 3 Met. 405, it seems to be assumed in the opinion of the court that it was merely an affirmance of the rule which had been repeatedly recognized by this court, as to the effect of. notice of an unrecorded deed, and not as a provision requiring more stringent evidence of knowledge of such deed.   But in

the later case of *Pomroy* v. *Stevens,* 11 Met. 244, it is assumed that a change in the law in this respect was introduced by the Rev. Sts. *c.* 59, § 28, and that no implied or constructive notice of an unregistered deed will give it validity against a subsequent attaching creditor. It was said that it was not sufficient to prove facts which would reasonably put the party on inquiry. It was there held that evidence of open occupation and cultivation of land and fencing it, by a person having an unrecorded deed thereof, was not sufficient to warrant the inference of notice of such deed to third persons. If this be so in reference to an occupation by a person coming into possession without any previous connection with the estate, how much more so when the occupancy relied upon to show notice is the occupancy of one long known as the owner of a moiety, or tenant in common of the estate ? Such possession would have no tendency to establish knowledge of a newly acquired title.

The inventory of the estate of Aaron C. Osgood gave no notice of the existence of this deed. The inventory was merely, " Building and land, $4000." If any form of an inventory could have been competent evidence to prove actual notice to third persons, the present one fails to furnish such evidence.

Nor can the fact of the assessment of, the taxes of this land wholly upon Aaron C. Osgood be evidence of notice of this deed. Such assessment might properly be made upon him as mere tenant in occupation, without any higher title, and equally so if he was in occupancy as a tenant in common with some other person. The proposed evidence of leasing a portion of other land that had been held in common by the parties, by Aaron C. Osgood separately, and sales of other portions by William F. Osgood, is of the like character. There were other lots of land held by these parties as tenants in common, acquired as heirs to their father, which might have been the subject of division and releases. The lot which is the subject of the present controversy came to them by an independent conveyance from Albigence W. Fisher. The general character of the evidence offered fails to show any such actual notice of this deed as the statute requires.

The only question that remains to be considered is as to the proposed evidence of a conversation alleged to have taken place between the petitioner and another attaching creditor of William F. Osgood. This conversation, if it authorizes the inference that, at the period it took place, the petitioner had actual knowledge of the existence of the deed of William F. Osgood to Aaron C. Osgood, which may be questionable, fails to establish the fact required to be proved, namely, actual notice of this deed to the petitioner at the time of making his attachment on the 21st of October 1853. This conversation took place some months subsequently, and does not recognize any knowledge of the existence of this deed at the time his attachment was made. Looking at the whole case, the court are of opinion that there was no sufficient evidence to sustain a verdict in favor of the respondent. As this evidence was withdrawn from the jury by the ruling of the court, the respondent is entitled to the benefit of it, giving to it its fullest effect, and with all the inferences that a jury might have drawn from it. It is substantially a question whether a verdict could have been sustained upon the evidence, had one been rendered for the respondent. In the view we have taken of the case, it could not, and therefore the jury were properly directed to return a verdict for the petitioner.

*Exceptions overruled.*